Mark McGRATH *v*. Randall L. CARSON, M.D.

CA 02–168 86 S.W.3d 415

Court of Appeals of Arkansas
Division III
Opinion delivered October 9, 2002

*J. Randolph Shock*; and *Jerry D. Pruitt*, for appellant.

*Warner, Smith & Harris, PLC*, by: *G. Alan Wooten* and *Matthew C. Carter*, for appellee.

JOHN MAUZY PITTMAN, Judge. The decedent in this medical malpractice case was an obese woman who had a history of suspected blood clots in her lower legs and who had recently had gall bladder surgery. She had been maintained on birth-control medication, which increases the risk of clotting, throughout these incidents. She presented at appellee's office complaining of shortness of breath, tachycardia, elevated blood pressure, and chest pains. The appellee stated that he considered coronary, pulmonary, esophageal, and arterial problems in attempting to diagnose her condition. He ultimately performed several tests, including a chest x-ray, and prescribed Tenormin, a drug used in the treatment of hypertension. Three days later the patient returned in much-worsened condition, was admitted to

the hospital by appellee, and died there shortly thereafter of a pulmonary embolism. Appellant, the decedent's husband, brought a wrongful death action against several entities and physicians, including appellee, alleging that they were guilty of negligent malpractice resulting in the decedent's death. The jury found in favor of the defendants, and this appeal followed.

For reversal, appellant contends that the trial court erred in failing to direct a verdict in his favor; in failing to grant judgment for him notwithstanding the verdict; and in failing to grant him a new trial on grounds that the verdict was contrary to the evidence. We affirm.

 The standard of review is essentially the same for all of appellant's arguments. *McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001); *Home Mutual Fire Insurance Co. v. Jones*, 63 Ark. App. 221, 977 S.W.2d 12 (1998). Review of the denial of a motion for directed verdict is directed toward determining whether the jury's verdict is supported by substantial evidence; in reviewing the denial of a motion for judgment notwithstanding the verdict, the question is whether there is no substantial evidence to support the jury's verdict and the moving party is entitled to judgment as a matter of law, *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002); the denial of a motion for new trial will not be reversed on appeal if the verdict is supported by substantial evidence. *McWilliams v. Schmidt, supra.* Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, forcing or inducing the mind to pass beyond suspicion or conjecture and, on appeal, we will only consider the evidence favorable to the appellee, together with all its reasonable inferences, in determining whether the evidence is substantial. *Home Mutual Fire Insurance Co. v. Jones, supra.*

██ ██ It is significant that, in the present case, appellant was plaintiff below when he moved for directed verdict and judgment notwithstanding the verdict. Given that appellant had the burden of proof below, a directed verdict or judgment notwithstanding the verdict would be proper only if there were no rational basis whatsoever for the jury to do other than believe the proof he

presented at trial. Former Justice George Rose Smith discussed the formidable standard applicable to review of this particular question in *Morton v. American Medical International, Inc.*, 286 Ark. 88, 90, 689 S.W.2d 535, 536-37 (1985):

> We are not aware of any Arkansas case in which a verdict for the party not having the burden of proof has been set aside in a negligence case solely because it was not supported by substantial evidence.
>
> The argument now made is presented so rarely that it seldom finds its way into the books. We did consider it in *Spink v. Mourton*, 235 Ark. 919, 362 S.W.2d 665 (1962). There the plaintiff, having lost below, argued that there was no substantial evidence to support the verdict and that (as it would logically follow) a verdict should have been directed for the plaintiff. In rejecting that argument we quoted with approval this language from *United States Fire Ins. Co. v. Milner Hotels*, 253 F.2d 542 (8th Cir. 1958):
>
> > Thus, no matter how strong the evidence of a party, who has the burden of establishing negligence and proximate cause as facts, may comparatively seem to be, he is not entitled to have those facts declared to have reality as a matter of law, unless there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise.
>
> The Supreme Court of Missouri correctly stated the common law rule, which also governs in Arkansas, in *Cluck v. Abe*, 328 Mo. 81, 40 S.W.2d 558 (1931):
>
> > The burden was not on the defendant, but was on the plaintiff to make out the case stated in his petition. In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached.

*See Webb v. Bouton,* 350 Ark. 254, 85 S.W.3d 885 (2002).

Appellant presents a very narrow issue on appeal: was the jury required to conclude, on the basis of the evidence before it, that appellee was negligent in failing to order a VQ scan that would have detected the pulmonary embolism? We note that the appellee himself stated in a deposition that he would definitely have ordered the VQ scan had he suspected a pulmonary embolism, but admitted at trial that he had, in fact, suspected a pulmonary embolism but did not order that particular test to be performed.

 Nevertheless, we think that the resolution of this conflict in the evidence was for the jury, and that there was evidence from which the jury could have inferred that appellee was not negligent in failing to order a VQ scan. Although appellant has argued that appellee was required to do so if he simply suspected that the decedent had a pulmonary embolism, we believe the real question is whether appellee had sufficient indications to give him such a *reasonable* suspicion that a pulmonary embolism was present that it would have been negligent not to order the VQ scan at that time. Given the extensive evidence at trial to show that pulmonary embolism is an extremely difficult condition to diagnose; that appellee was not a pulmonary specialist but instead a general practitioner; that one of the cardinal symptoms of pulmonary embolism (coughing up blood) was absent when appellant presented to appellee; that decedent's symptoms of shortness of breath and chest pain could have been caused by a wide range of diseases; and that appellee did order a chest x-ray that is ninety percent effective in detecting whether pulmonary embolism is present and which failed to detect any evidence of embolism at that time; we think that the jury could reasonably have found that appellee was not negligent in failing to order the VQ scan at the time of her initial office visit.

Affirmed.

BIRD, J., agrees.

ROBBINS, J., concurs.